**DISSENT and Opinion Filed August 22, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00205-CV

**CKJ TRUCKING, LP. AND STEPHEN JACK BOND, Appellants**
**V.**
**THE CITY OF HONEY GROVE, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. CV-16-0633**

## DISSENTING OPINION FROM DENIAL OF
## EN BANC RECONSIDERATION
Opinion by Justice Reichek

Upon internal request, a majority of the Court voted to deny en banc reconsideration of this case. I respectfully dissent from that decision and the panel's decision for the reasons stated below.

This case presents the question of whether the Texas Tort Claims Act waives governmental immunity for the actions of Honey Grove police officer Zachary Scott Williamson who, while off-duty and outside his employer's city limits, took it upon himself to investigate a scene of police activity in Trenton, Texas, and allegedly caused a car accident in the process. The panel's opinion sets forth the background facts in this case at length, and I will not reiterate those facts other than to note that Williamson testified he decided to investigate several unoccupied cars in a parking lot, including a police squad car with its lights activated, because the scene "did not appear to be secure." He stated he "didn't see any of the occupants from either vehicle being detained or interviewed, which is a safety issue." He elaborated that he "didn't see the Trenton officer in the

process of issuing a citation or speaking to anybody," which made the situation "atypical" and raised the possibility that the absent police officer might be ambushed, in distress, in need of assistance, or be in physical danger. It was while Williamson was still some distance from the scene, and approaching it by car, that the accident occurred.

Even though, at the time of the accident, Williamson was (1) not on duty for the city of Honey Grove, (2) physically located outside Honey Grove city limits, (3) not being paid by Honey Grove, and (4) not undertaking a task that was assigned to him by Honey Grove, the majority opinion holds that Williamson was acting within the course and scope of his employment with the city such that it had waived governmental immunity. Because this conclusion is based on a misapplication of the relevant provisions of the code of criminal procedure, a misunderstanding of the Texas Tort Claims Act, and a misreading of *Garza v. Harrison*, 574 S.W.3d 389 (Tex. 2019), I disagree with the panel's holding in this case.

## Governmental Immunity

Governmental immunity serves two important purposes; first, it precludes second-guessing of certain governmental actions and decisions. *Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004). Second, it serves to protect the public treasury by shielding the public from the cost and consequences of imprudent actions of their government. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692 (Tex. 2003). Accordingly, it is well-established that (1) the waiver of governmental immunity is a matter addressed to the Legislature, and (2) the Legislature can waive governmental immunity only by "clear and unambiguous" language. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex.1980). A city may not be sued or held liable for the torts of its agents in the absence of a constitutional or statutory provision that waives its immunity for the

alleged wrongful acts. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976).

In this case the relevant statutory provision is found in the Texas Tort Claims Act, and the operative language is found at TEX. CIV. PRAC. & REM. CODE § 101.021: A governmental unit in this State is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee *acting within the scope of his employment* if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law. The outcome of this appeal hinges on whether Williamson was "acting within the scope of his employment" when he engaged in the actions that allegedly caused the accident. The Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee of competent authority." TEX. CIV. PRAC. & REM. CODE § 101.001(5). At the time of the accident Williamson was not on duty, not physically located within the jurisdictional limits of the City of Honey Grove, not being paid by the city, and not undertaking a task that was assigned to him by the City. The majority opinion nevertheless found that Williamson was acting within the course and scope of his employment with the City because Texas Code of Criminal Procedure articles 6.06, 14.03(d)&(g)(2), and 2.13 empower police officers to intervene to prevent crime statewide under certain circumstances even while off duty. The majority opinion further concludes that Williamson's intervention was warranted because he had "reasonable suspicion" of criminal activity. These statutes, however, do not authorize a police officer to intervene in the circumstances presented by this case, and neither does the common law principle of "reasonable suspicion."

## Code of Criminal Procedure

In pertinent part, Texas Code of Criminal Procedure Art. 6.06 provides that "[w]henever, in the presence of a peace officer, or within his view, one person is about to commit an offense against the person or property of another, … or injure himself, it is his duty to prevent it." In this case, Williamson did not observe and was not in the presence of a "person" at all, only vehicles. And, since there was no "person" in Williamson's presence or view, he could not have perceived that someone was "about to commit an offense" as required by the section.

Article 14.03(d) provides that "a peace officer who is outside his jurisdiction may *arrest*, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace." (emphasis added). Here, again, there was no "person" observed by Williamson or in his presence, to say nothing of whether this non-existent person was committing a felony, a violation of Chapters 42 or 49, or committing a breach of the peace; nor do appellants contend that Williamson was in the process of making an arrest when he allegedly caused the car accident. This article is simply inapplicable.

Article 14.03(g)(2) is similar in that it provides that a peace officer may *arrest* without warrant a person who commits "any offense within the officer's presence or view" even while outside his jurisdiction. (emphasis added). So, like Art. 6.06, the actions an officer may take hinge on whether a "person" commits "an offense within the officer's presence or view," and like Art. 14.03(d) speaks to the circumstances under which an officer may make an arrest – facts that are not present in this case.

Article 2.13 authorizes peace officers to intervene without warrant to prevent or suppress crime "in every case authorized by the provisions of this Code." But the other provisions of the

Code do not authorize peace officers outside their jurisdiction to intervene in the absence of a person committing or about to commit a crime in his presence. Accordingly, art. 2.13 is also unavailing on these facts.

### Reasonable Suspicion

Perhaps recognizing the facts of this case are insufficient to support a waiver of governmental immunity under the language of the articles relied upon, the panel goes on to find that the City waived governmental immunity because Williamson's "public duty" to act was triggered by his "reasonable suspicion" that a crime was "about to occur," and this "duty to act placed him within the scope of employment with the Honey Grove police department." The panel opinion draws from criminal case law that addresses whether a police officer may conduct an investigatory detention with something less than "probable cause," e.g., "reasonable suspicion." But these cases do not involve a dispute over whether a police officer was acting within the scope of his employment for purposes of governmental immunity and, as such, do not support expanding the waiver of immunity beyond its clear language, or offer anything approaching "clear and ambiguous" evidence that the Legislature waived the City's immunity when it authorized peace officers to arrest or intervene in certain situations. *Sw. Bell Tel., L.P. v. Harris County Toll Road Auth.*, 282 S.W.3d 59, 68 (Tex. 2009) ("[b]ut as we have often noted, the Legislature is best positioned to waive or abrogate sovereign immunity 'because this allows the Legislature to protect its policymaking function'").

Even if we could expand the waiver of governmental immunity in the manner suggested by the panel opinion, Williamson did not have "reasonable suspicion" as defined by the Texas Court of Criminal Appeals. Under the Fourth Amendment, "reasonable suspicion" exists when an officer is aware of specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or

soon will be) engaging in criminal activity. *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). This standard is objective; the subjective intent of the officer conducting the detention is irrelevant. *Id*. Under this standard, Williamson did not have "reasonable suspicion." He was aware of no "particular person" let alone any person who was engaged in or who would soon be engaged in criminal activity. He articulated "subjective intent," but under *York*, this is not enough. In summary, the panel opinion has held that off-duty police officers that are outside of their jurisdiction not only can, but *must* intervene in circumstances like those presented in this case, and, when they do, their city employers can be held liable. This result imposes far greater duties on peace officers, and far greater liability on cities, than called for by either the TTCA or code of criminal procedure.

## Garza v. Harrison

The panel opinion relies heavily on the Supreme Court's recent opinion, *Garza*, *v. Harrison*, 574 S.W.3d 389 (Tex. 2019), to justify its finding that the City waived its governmental immunity. In *Garza*, the court found that an off-duty police officer who intervened in a crime beyond the jurisdiction of the city that employed him was acting within the "scope of his employment" for election of remedies purposes. The panel's reliance on this case is misplaced for several reasons. First, the officer in *Garza* actually witnessed a person committing a crime, bringing his actions within the purview of the statutes discussed above. *Garza*, 574 S.W.3d at 395.

Second, *Garza* does not address waiver of governmental immunity under section 101.021; rather it addresses the election of remedies provision of the TTCA found in section 101.106(f), as Justice Boyd's concurrence is careful to note. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). Although both section 101.106(f) and 101.021 incorporate "scope of employment" language, the analyses under these sections is quite different. Section 101.106(f) provides that a governmental employee is sued in an official capacity when the suit is based on conduct within

the "general" scope of that employee's employment. Section 101.021, on the other hand, provides that a city surrenders its immunity if an employee acted "within the scope of his employment." Section 101.021 omits the word "general," which is a term of enlargement that serves to expand the conduct that could serve as a basis for finding that an employee sued in his individual capacity was in reality sued in his official capacity for election of remedies purposes. We must assume that the Legislature chose different words for these provisions for a reason, *Chevron Corp. v. Redmon*, 745 S.W.2d 314 (Tex. 1987),[1] and approach the waiver question with a directive to find it only when such waiver is "clear and unambiguous." Unlike a waiver of immunity which must be clear and unambiguous, section 101.106(f) strongly favors the dismissal of the governmental employee. *Univ. of Texas Health Sci. Ctr. at San Antonio v. Webber-Eells*, 327 S.W.3d 233, 242 (Tex. App. 2010); *Garza*, at 405, n.77 (citing cases where Texas Supreme Court has articulated a broad construction of § 101.106(f)).

Finally, *Garza* makes clear that it was not addressing whether suit "could have been brought under the [TTCA] against the governmental unit." The opinion specifically states that this determination – the one at issue in this case – was not before the Court because the parties stipulated that "suit 'could have been brought' under the Act against the City of Navasota, and so [the Court] need not substantively address [this matter]." *Id*. at *6. Justice Boyd, joined by Justice Lehrmann, wrote separately to reinforce this point: "I agree with the Court's analysis and join its opinion and judgment. I write separately only to emphasize that the Court does not decide or address whether this action 'could have been brought' against the City of Navasota."

Because I believe this Court's decision greatly expands the waiver of governmental immunity in a manner that is not supported by the law, I dissent from the Court's decision not to

---

[1] See also *Fitzgerald v. Advanced Spine Fixation Sys.,* 996 S.W.2d 864, 866 (Tex.1999) (quoting *Addison v. Holly Hill Fruit Prods. Inc.,* 322 U.S. 607, 618, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944)) ("One significant benefit is that by not reading language into the statute when the legislature did not put it there, we do not risk crossing the line between judicial and legislative powers of government as prescribed by article II of the Texas Constitution.").

reconsider this case en banc.


/Amanda L. Reichek/

AMANDA L. REICHEK
JUSTICE


Bridges, Myers, Brown, Whitehill, and Schenck, J.J. join this dissenting opinion.


180205HD.905